IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FLOYD P. TARVIN, IV,              §
TDCJ-CID #1123659,                §
        Plaintiff,             §
                         §
                         §
v.                                §          CIVIL ACTION NO. H-06-2456
                         §
BRAD LIVINGSTON, *et al.*,         §
        Defendants.              §

## MEMORANDUM OPINION AND ORDER ON DISMISSAL

Floyd P. Tarvin, IV, TDCJ-CID #1123659, a state inmate proceeding *pro se* and *in forma pauperis*, filed this complaint under 42 U.S.C. § 1983, alleging violations of his and other inmates' constitutional rights by prison restrictions on telephone access and storage of legal and religious property. He seeks class action certification, declaratory and injunctive relief, and punitive damages.

Having reviewed the complaint as required by 28 U.S.C. § 1915A(a), the Court will dismiss this lawsuit as frivolous and for failure to state a claim.

### I.  Request for Class Action Certification

Plaintiff claims that prison policies restricting inmate telephone access and storage of legal and religious materials constitute "barbaric, degrading and inhumane conditions" of imprisonment for all TDCJ inmates. He seeks certification of this lawsuit as a class action with appointment of himself as the class representative. Plaintiff states no facts showing that he has suffered a specific constitutional injury from these alleged violations of his

constitutional rights and therefore, fails to show that other inmates may generally suffer the same type of injury. Plaintiff's complaint fails to meet the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Regardless, this case is dismissed as frivolous and for failure to state a claim, rendering moot the issue of class action certification.

## II.   Standard of Review

The complaint in this case is governed by the Prison Litigation Reform Act ("PLRA"). Because plaintiff is an inmate proceeding *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of his complaint, and, if appropriate, dismiss the case without service of process if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, an inmate's *pro se* pleading is reviewed under a less stringent standard than those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences which can be drawn from it. *Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). A review for failure to

2

state a claim under section 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). Under that standard, courts must assume that a plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Id.*

### III.   Request for Monetary Damages

To the extent that plaintiff seeks monetary compensation for violations of his constitutional rights, he fails to show the requisite physical injury. *See Geiger v. Jowers*, 494 F.3d 371 (5th Cir. 2005). His requests for declaratory and injunctive relief, however, are not precluded by the physical injury requirement. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

To the extent that plaintiff's request for punitive damages is premised on mental or emotional distress, he has not alleged facts showing that defendants' conduct was so egregious or reprehensible as to warrant punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003); *BMW of North Amer. Inc. v. Gore*, 517 U.S. 559, 575 (1996). As held by the Fifth Circuit Court of Appeals,

> Insofar as the appellants have requested punitive damages, this claim is frivolous under 28 U.S.C. § 1915(d). There is no arguable basis in law or in fact for a contention that, in promulgating this facially neutral administrative directive governing prisoners' accumulation of property, any TDC official maliciously, wantonly, or oppressively violated the constitutional rights of prisoners, as would be required for the assessment of punitive damages.

*Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990) (citations omitted).

In any event, plaintiff fails to demonstrate a constitutional deprivation, as shown below.

### IV.   Restrictions on Telephone Access

Plaintiff complains that TDCJ Administrative Directive 03.90 (AD 3.90) is unconstitutionally overbroad and arbitrary because it restricts him to one five-minute collect telephone call every ninety days, limited to ten individuals listed on his prison visitation list. He claims that this policy unduly restricts his right to communicate with family, spiritual advisors, and legal counsel, and has no valid penological justification. He requests the Court to strike down the directive as unconstitutional and order TDCJ to implement an inmate public telephone system without monetary commission or revenues to TDCJ or the State of Texas.

The Fifth Circuit has found that inmates have no right to unlimited telephone use. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982). In light of *Lopez*, this Court assumes (without deciding) for purposes of initial screening that plaintiff enjoys a constitutional right to *some* telephone access. Prison officials can regulate telephone usage without violating the Constitution so long as such regulation does not result in an inmate's complete inability to communicate with the courts, counsel, family, or friends. *See Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). Thus, although prison walls do not remove all constitutional rights, prison officials may validly enact and enforce regulations and procedures which infringe

4

upon constitutional rights of inmates or outsiders if such regulations or procedures are reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). The exact nature of telephone service to be provided to inmates is generally determined by prison administrators, subject to judicial scrutiny for unreasonable restrictions. *Id.*

In determining the reasonableness of a prison restriction, the courts consider whether (1) a valid, rational connection exists between the restriction and a legitimate governmental interest, including whether the restriction operates in a neutral fashion, without regard to the content of the expression; (2) an alternative means of exercising the right exists; (3) accommodating the constitutional right will have a significant negative impact on guards and other inmates, and on the allocation of prison resources generally; and (4) obvious, easy alternatives to the restriction exist thus showing the restriction to be an exaggerated response to prison concerns. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Plaintiff does not show that the prison restriction on telephone access fails under *Turner*; indeed, he does not even address the *Turner* factors. Nevertheless, this Court notes that Texas state inmates, including plaintiff, may send communications to, and receive communications from, the courts, legal counsel, religious advisors, and family through the inmate mail system. Moreover, a valid, rational connection would exist between the restriction and a legitimate governmental interest in protecting the outside public from telephone harassment by inmates, and in preventing illegal or prohibited activities between

5

or among inmates and outside individuals.  The telephone access restriction operates in a neutral fashion as to all inmates and their potential contacts, and does not discriminate on the basis of the content of the intended telephone communication.  Further, allowing inmates access to a public telephone system would in all likelihood require additional prison staff and personnel to monitor and oversee telephone communications for illegal or prohibited activity, significantly and negatively impacting prison officials and the allocation of prison resources generally.  Plaintiff does not present any obvious, easy alternatives to the restrictions in place.  That other state prison systems employ more expansive or less restrictive telephone access policies for inmates does not give rise to an unconstitutional policy in the instant case. Nor does plaintiff show the restriction unconstitutional as applied to him by demonstrating a specific constitutional injury resulting from the restriction.

Inmates may only expect that the society they once abused will provide them with constitutionally adequate confinement, not "the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir.1988), quoted with approval in *Wilson v. Lynaugh*, 878 F.2d 846, 849 n. 5 (5th Cir. 1989).  For the reasons stated above, the Court finds that the prison telephone restrictions in AD 3.90 do not violate plaintiff's constitutional rights.  His challenges to the constitutionality of the telephone access restrictions will be denied for failure to state a claim.

## V.   Restriction on Storage of Legal Materials

Plaintiff complains that the volume of legal materials inmates are allowed to store is restricted by an unconstitutional prison regulation.  The restriction allowed him to receive supplemental legal storage space, but only if he surrendered half of his personal storage space in return.   Plaintiff claims that the restriction on legal storage space is unconstitutionally overbroad and arbitrary, and "chills" his right of access to courts.

To the extent plaintiff is raising an access to courts violation, he fails to show an actual injury stemming from the defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding that without proving actual injury, an inmate plaintiff cannot prevail on a denial of court access claim).  If a litigant's legal position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not valid.  Nothing in the record shows that plaintiff's position as a litigant in a specific case was prejudiced by the enforcement of the legal storage restriction.  Plaintiff's access to the courts claim will be dismissed as frivolous.

To the extent plaintiff complains that the restriction is unconstitutional on its face and as applied, the Fifth Circuit has rejected this argument. In *Long v. Collins*, 917 F.2d 3, 4 (5th Cir. 1990), prisoners challenged TDCJ Administrative Directive 03.72, which mandated that inmates will be provided with storage containers of approximately 1.75 cubic feet capacity. Under this earlier policy, a TDCJ warden could permit an additional storage unit of 2.25

cubic feet capacity to be obtained for storage of a prisoner's legal materials. The regulation states that if a prisoner's property cannot fit within these storage containers, it must either be mailed home at the inmate's expense, retrieved by approved visitors, or turned over to the prison for destruction. In upholding the policy, the Fifth Circuit reasoned:

> It seems to us, as it did to the district court, highly dubious that a facially neutral prison storage space limitation of four cubic feet might in any way restrict a prisoner's exercise of constitutional rights, especially considering the obvious space limitations in a prison setting. That each inmate possesses well over 5,000 pages of legal papers and is participating in at least five lawsuits bespeaks eloquently the current misallocation of social resources toward excessive prisoner litigation.

*Long*, 917 F.2d at 4 (citations omitted). In a more recent unpublished opinion, the Fifth Circuit found that prisoners failed to show that A.D. 03.72, the newer version of the legal materials storage restriction challenged in *Long*, violated due process. *Duplantis v. Carmona*, 2004 WL 75424, *1 (5th Cir. January 16, 2004). Nor does plaintiff here show that he has suffered a specific constitutional injury from this restriction. Plaintiff's constitutional challenges to TDCJ's restriction on storage of legal materials fail to state a claim and will be dismissed.

## VI.   Restriction on Storage of Religious Materials

A.   Freedom of Exercise

Plaintiff claims that a prison regulation restricting the volume of religious materials he may store violates his right to religious freedom under the First Amendment. His argument is without merit. In an unpublished opinion, the Fifth Circuit upheld this or a

8

substantially similar restriction as reasonably related to legitimate penological interests under

*Turner v. Safley,* 482 U.S. 78, 89 (1987). *See Carrio v. Texas Dep't. of Criminal Justice,*

No. 05-20189, 2006 WL 2460882 (5th Cir. 2006); *see also Freeman v. Texas Dep't of*

*Criminal Justice,* 369 F.3d 854, 861 (5th Cir. 2004) (holding that prison staff, space

limitations, and financial burdens are valid penological interests). Nor does plaintiff show

that he has suffered a specific constitutional injury from application of this restriction. His

free exercise challenge to the restriction fails to state a claim and will be dismissed.

B.    RLUIPA

Plaintiff claims that the religious material storage restriction violates the Religious

Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA). Under

RLUIPA,

> No government shall impose a substantial burden on the religious exercise of
> a person residing in or confined to an institution . . . even if the burden results
> from a rule of general applicability, unless the government demonstrates that
> imposition of the burden on that person–
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling
> > governmental interest.

RLUIPA prohibits the State from imposing a "substantial burden" on the practice of

religious faith. Under the RLUIPA, a plaintiff must produce *prima facie* evidence to support

a violation, and he bears the burden of persuasion on whether the policies and regulations

substantially burden his exercise of religion. 42 U.S.C. § 2000cc-2(b).

Plaintiff's claim under RLUIPA is without merit because he has not demonstrated that the storage restriction has substantially burdened his religious exercise. 42 U.S.C. § 2000cc-1. The Fifth Circuit has determined that governmental action or regulation creates a "substantial burden" on a religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570-71 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 2549 (2005). A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it "merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.* The Supreme Court recently made it clear that under RLUIPA, accommodation of religious observances is not elevated over a prison's need to maintain order and safety. *Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Plaintiff's RLUIPA challenge to the religious materials storage restriction fails to state a claim and will be dismissed.

## VII.   State Law Claims

A federal district court has supplemental jurisdiction over all other claims that are so related to claims in the action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). The Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because the Court has

dismissed plaintiff's section 1983 claims, the Court declines to exercise supplemental jurisdiction over the claims he asserts based on state law. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999); *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994).

## VIII.   Customary International Law

With absolutely no further identification, explanation, or factual allegations, plaintiff baldly asserts that the telephone and property storage restrictions violate "Customary International Law." Plaintiff fails to identify any applicable "Customary International Law" or provide any factual allegations to show how international law applies to his case. *See Beazley v. Johnson*, 242 F.3d 248, 268 (5th Cir. 2001) (applying long-standing principle that courts look to the norms of international law only where there is no treaty and no controlling executive or legislative act or judicial decision). Even assuming plaintiff were to identify "Customary International Law," Congress has clearly enacted statutes which control the present situation, and the application of international law would stand preempted. *See Martinez-Lopez v. Gonzales*, 454 F.3d 500, 503 (5th Cir. 2006). Plaintiff's conclusory claims regarding application and violation of "Customary International Law" are frivolous and will be dismissed.

## IX.   Conclusion

This lawsuit is **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim under 28 U.S.C. § 1915(e). Any and all pending motions are **DENIED AS MOOT**.

The Clerk is directed to provide a copy of this order to the parties; the TDCJ-Office

of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-

2159; and the Clerk of Court, United States District Court for the Eastern District of Texas,

211 West Ferguson, Tyler, Texas 75702, attention: Betty Parker.

Signed at Houston, Texas, on this the ___ day of October, 2006.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE